Marissa Loftis
25300 Oakana Rd.
Ramona, CA 92065
760-429-8664
loftismarissa@gmail.com

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISSA LOFTIS ET AL., | Case No.: 16-cv-2300-MMA(DHB) |
| Plaintiff, | |
| vs. | FIRST AMENDED CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. §1983 FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF |
| DENISE RAMOS, SERGEANT; J. WILBORN, LIEUTENANT; D. GARCIA, R. ARAUJO, K. MITCHELL; J. UGALDE; VALADEZ, CHRIS DANIEL PARAMO, WARDEN; AND DOES 1-10, | |
| Defendant | |

## I.    RELATED CASES

PLAINTIFF does not have any other Civil cases in this court or any other Federal court.

## II.    PARTIES

**PLAINTIFF:**

1.    Plaintiff Marissa Loftis, who presently resides in Ramona, California, and at all times relevant to this complaint, was a frequent citizen visitor at Richard J. Donovan Correctional Facility (RJD) in San Diego, California.

1

**DEFENDANTS:**

2.      Denise Ramos, at all times relevant to this complaint, was a prison official employed by the California Department of Corrections and Rehabilitation (CDCR), posted at the RJD facility, and acting under the color of the state law.

3.      J. Wilborn, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the state law.

4.      D. Garcia, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the state law.

5.      R. Araujo, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the state law.

6.      K. Mitchell, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the state law.

7.      J. Ugalde, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the state law.

8.      Valadez, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the law.

9.      Daniel Paramo, at all times, relevant to this complaint, was a prison official employed by CDCR, posted at the RJD facility, acting under the color of the law.

10.      DOES 1-3, (real names are presently unknown to Plaintiff, but will be amended once their true names become known to Plaintiff) at all times, relevant to this complaint, were prison officials, employed by CDCR, posted at the RJD facility, acting under the color of the state law.

2

11.    All Defendants', abovementioned, are sued in their individual and official capacities.

**III.    STATEMENT OF CLAIM**

## COUNT 1:

1.  Plaintiff Marissa Loftis (Mrs. Loftis or Plaintiff) and her minor son Marquise Loftis Jr. (Marquise Jr.), began visiting her incarcerated husband and Marquise Jr. father, Marquise Loftis Sr. (Mr. Loftis), at RJD in 2013.

2.  Throughout mid-2013 to approximately late September 2013, correctional officers monitoring the visitation room changed frequently. The frequent changes brought about new unwritten rules that each officer enforced for their particular style. (e.g. one officer would require both the inmate and the visitor to sit facing the staff podium and another officer will only require the inmate to face the staff podium with the visitor seated facing the opposite direction from the staff podium) and other inconsistencies on how inmates and visitors could interact with one another on a particular officer's work day.

3.  In mid to late September, defendant D. Garcia (Garcia) started being assigned as the visiting room officer more frequently and establishing new rules.

4.  On October 5, 2013, Garcia, introduced an entirely new and unwritten rule, forbidding inmates from holding their minor children on their laps, including Mr. Loftis and minor child.

5.  Plaintiff and Mr. Loftis challenged Garcia's imposition of the new rule that would violate CDCR's own regulations and would have a negative impact on Marquise Jr. and Marquise Sr.'s limited bonding time. Garcia then became angry at Mr. and Mrs. Loftis questioning her authority and threatened to terminate their visit for the day.

3

6. After visitation expired for the day, Plaintiff lodged a complaint against Garcia's new rule and the lack of stability with the visiting room rules with Defendant Ramos, who was the Sergeant/Supervisor.

7. On or about October 9, 2013, Garcia, was working in the facility Plaintiff's husband was housed in when she inquired with Mr. Loftis as to why Plaintiff had made complaints against her.

8. On October 10, 2013, Garcia began harassing Plaintiff and her husband by accusing them of talking to loud in a crowded visiting where approximately forty other people were visiting and falsely accused Plaintiff and Mr. Loftis of excessive contact in retaliation for Plaintiff complaining against her.

9. On subsequent visits after October 10, 2013, and making complaints against Garcia, she would subject Plaintiff to illegitimate dress code violations, delaying Plaintiff's visits for hours, harass Plaintiff and her husband, and elicit the assistance of other officers to harass and retaliate against Plaintiff and Mr. Loftis, including Defendants D. Ramos(Ramos), R. Araujo(Araujo), K. Mitchell(Mitchell), and the Jane Doe defendant, abovementioned.

10. After Plaintiff made the complaints about Garcia to Ramos, Ramos demonstrated her dislike of Plaintiff complaining by targeting her with illegitimate dress code violations and other retaliatory harassment.

11. Throughout late 2013 and early 2014, Plaintiff and Mr. Loftis filed several additional administrative grievances and made oral complaints with the proper supervisory officers against Garcia, Ramos, and the proxy officers working at their behest to retaliate/harass plaintiff.

4

12. After Plaintiff and Mr. Loftis' new complaints against Ramos and Garcia, Araujo took a more aggressive and pronounced position in his retaliatory attacks on Plaintiff, including terminating her visit on February 23, 2014, without any lawful reason or basis.

13. On February 23, 2014, after Araujo terminated plaintiff's visits for the day, she made a complaint to Lieutenant S. Anderson (the lieutenant) in the process of Defendant Ramos.

14. Plaintiff complained to the lieutenant, that he and other visiting officials had previously told her and other visitors that inmates could hold their minor children and that based on Mr. Loftis holding their minor son their visitation privileges were terminated for the day. Plaintiff further told the lieutenant that at the time she was terminated other inmates were holding their children and that he believes Araujo's motives were retaliatory and based on Plaintiff and her husband making complaints.

15. The lieutenant confirmed inmates were allowed to hold their minor children on their laps and agreed to have a meeting with his staff to settle the dispute and encourage Plaintiff to bring other problems with the visiting officers either to himself or Ramos, at which time, Plaintiff stated Ramos was a part of the problem.

16. On March 16, 2014, in response to the complaint on February 23, and previous complaints, Ramos again targeted Plaintiff with illegitimate dress code violations and obstructed her visit once Plaintiff was allowed inside.

17. Plaintiff attempted to complain against Ramos, but Ramos prevented her with threats or falsehood, such as claiming the lieutenant was not in his office, when he was.

18. On March 22, 2014, Plaintiff and Marquise Jr. were visiting Mr. Loftis.

5

19. Plaintiff went inside the visiting room from the visiting patio, where Mr. Loftis and Marquise Jr. were, to buy beverages at the vending machine, when she saw Ramos enter the visiting room and go to the staff podium where Araujo was stationed for the day.

20. Plaintiff witnessed Ramos and Araujo conversing and looking in the direction of Mr. Loftis and Marquise Jr., and then to Plaintiff.

21. Araujo then went out to the visiting patio where Plaintiff could see him ordering Mr. Loftis and Marquise Jr. to go inside the visiting room.

22. Plaintiff intercepted them at the entrance and took custody of Marquise Jr. and Mr. Loftis was taken to the inmate exit.

23. Plaintiff and Marquise Jr. returned to their assigned table and was later told by the inmate porter that Mr. Loftis was not coming back out and that their visit was terminated.

24. Plaintiff approached Araujo to inquire why their visit was terminated, and he responded he "did not know" and that Ramos gave the order.

25. When Plaintiff arrived at the visitor lobby to exit the prison, she was confronted by Ramos, who presented her with a CDC 887-B, "NOTICE OF VISITOR WARNING/ TERMINATION/ SUSPENSION/ DENIAL/ REVOCATION" purporting to terminate Plaintiff's visit for the day for excessive contact. (See CDC 887-B, dated 3/22/14 attached as Exhibit A)

26. On March 23, 2014, when Plaintiff arrived to visiting, she was confronted again by Ramos and told her visit was going to be restricted to non-contact or behind the glass

visits pending a disciplinary hearing, despite only claiming to terminate Plaintiffs visit for the day on March 22. (See Exhibit A).

27.    On March 24, 2014, Mr. Loftis was served with a CDC-115 Rules Violation Report (RVR) authored by Araujo, falsely accusing Plaintiff and him of excessive contact and further falsely accusing them of confessing to the charge. (See RVR, Log #FA-03-14-036, dated 3/24/14 attached as Exhibit B)

28.    Araujo falsely accused Plaintiff and Mr. Loftis of the charges in the RVR at the behest of Ramos, and in retaliation for making several complaints against visiting officers, including Araujo.

29.    The charges were later found to be unfounded, and Plaintiff and Mr. Loftis were cleared of any wrong doing.

30.    On March 30, 2014, Plaintiff filed a "Citizens Complaint" with the highest authority at RJD, Defendant Warden Daniel Paramo (Paramo), alerting him of the unconstitutional acts of Araujo and Ramos, abovementioned. (See Exhibit C, Citizens Complaint.)

31.    Paramo failed to act to stop his subordinated officers from violating Plaintiff's rights, abovementioned, or properly train his officers.

32.    Paramo was aware of the rogue culture of visiting officers targeting citizen visitors with illegitimate dress code violations, strip searches, false charges, and other forms of harassment to silence them and/or bully them for exercising their constitutional rights, but was deliberately indifferent to their suffering, including Plaintiff.

33.    Paramo received vast amounts of "Citizens' Complaints" against visiting staff violating their constitutional rights, but he failed to act on them, and as a result; Ramos,

Garcia, Araujo, and other officials, as mentioned below, were allowed to violate Plaintiffs

rights, including till the present.

34. In mid or late 2015, Defendant K. Mitchell began working in the visitor

processing area and soon fell in with Ramos and Garcia and began targeting Plaintiff for

complaints filed long before she began working as a visiting officer.

35. On July 5, 2015, while Mitchell was working with Garcia and Ramos, they all

targeted Plaintiff, for no less than five retaliatory dress code violations and acted

intentionally to delay Plaintiff's entrance into visiting for multiple hours.

36. All the Defendant's, abovementioned, continued to retaliate against Plaintiff

throughout 2015 and early 2016, leading to more complaints.

37. Paramo continued to be indifferent to the complaints so the officers'

unconstitutional behaviors became worse, as with previous complaints.

38. On April 17, 2016, Plaintiff and her minor son were held against their will,

Plaintiff was forced to submit to an unclothed body search, and unauthorized search of

her vehicle and mobile phone by Defendant's Ramos, J. Wilborn (Wilborn), J. Ugalde

(Ugalde), Valadez, and several unidentified officers, or (DOES), in retaliation for her

accumulated complaints against visiting officers, starting with Garcia and Ramos.

39. All defendants above and other RJD visitation officers worked in concert with

one another to target citizen visitors and inmates who spoke out and against their

visitation policies and practices, and to silence any opposition.

40. Visitation officials at RJD systematically used illegitimate dress code violations,

harassment, strip searches, false charges, false imprisonment/illegal seizures,

intimidation, and other unconstitutional acts to deter citizens from exercising their constitutional rights, including all Defendant's above.

41. All Defendant's above acted intentionally to inflict mental and emotional pain and distress on Plaintiff and her minor son.

42. All Defendant's above targeted Plaintiff based solely on her exercising rights protected by the U.S. Constitution.

43. All Defendants above retaliatory actions against Plaintiff stemmed from complaints she started making in 2013 and continued to make until 2016.

## Count 2:

44. On April 17, 2016, at approximately 11:30 a.m., Plaintiff arrived at the RJD visitor processing lobby and was processed by an unidentified officer, who withheld her state identification card and her minor sons birth certificate, which were required to enter and leave the prison grounds.

45. Defendant Ramos emerged from her office, retrieved Plaintiffs ID card and her son's birth certificate and ordered Plaintiff to accompany her into the office and leave her minor son to sit in a chair stationed outside of the office door.

46. Once Plaintiff was inside the office she noticed another unidentified female officer (Jane Doe) who closed the door and took a guarding position in front of the door blocking Plaintiffs exit.

47. Ramos then falsely claimed that she received a call that Plaintiff had drugs on her person and that Plaintiff must be cavity searched before she could continue on to her visit.

48. Plaintiff denied having anything illegal on her person, refused to consent to a strip search, and requested to either be allowed to continue to her visit or take her minor son and leave the prison.

49. Ramos and the DOE officer began threatening Plaintiff making statements, such as, she was going to get double time in prison and lose custody of her minor son forever if she did not cooperate with them.

50. Plaintiff demanded several times to be released and given custody of her child if Ramos and DOE did not have a warrant from the court compelling her to be there.

51. Ramos told Plaintiff she was not free to leave because a search warrant for her was in route to the prison that authorized an unclothed body search.

52. Ramos and the DOE officer then escorted Plaintiff out of the office back into the visitor's lobby, Plaintiff told her son to come with her. The DOE officer blocked his path and Ramos stated Plaintiff no longer had custody of her son and could not speak to him.

53. Plaintiffs son was left in the visitor's lobby alone and crying while Ramos and the DOE officer forcibly escorted Plaintiff to another office under duress.

54. Plaintiff was placed in the file room with the door closed and DOE officer standing guard at the door by herself.

55. After being held in the file room for approximately 15-20 minutes, Ramos came back into the office and told Plaintiff she was giving her one last chance to consent to a voluntary strip-search or things were going to be worse. Plaintiff again demanded a search warrant and refused to voluntarily consent to a strip search.

56. Ramos then snatched Plaintiff's bag that contained her car keys and money she was permitted to bring for the visit. Plaintiff told Ramos that she did not have permission

10

to hold her property or go into her car. Ramos stated Plaintiff was on state property and she could do whatever she wanted and left Plaintiff in the filing room.

57. Later in the detention, Ramos and the Jane DOE officer escorted Plaintiff to another office, where Defendant "Chris" was on the phone who purported to be an officer with the RJD Investigative Services Unit (ISU). Chris stated he was on the way with the warrant and that Plaintiff should just consent to the search before he got to the prison to make things easier on herself. Plaintiff again refused and demanded the warrant or to leave and was again refused by all officers.

58. Plaintiff was again forced to stay in this office with an unidentified male officer guarding her this time.

59. Approximately 1 ½ hours of detention, Ugalde arrived to talk to Plaintiff. Ugalde attempted to coax Plaintiff into submitting to a strip search before the warrant arrived, stating he was trying to help her. She, as on several other occasions, refused and demanded to leave, and demanded to know where her son was and if he was ok since she could no longer hear him.

60. Ugalde agreed to check on Plaintiffs son, told her the warrant was almost there, and left.

61. At approximately 2:30 p.m. Chris, Ramos, and Jane DOE came to the office where Plaintiff was being held. They had Plaintiffs phone, which was left in her car, and were passing her phone around.

62. Ramos and Chris claimed Plaintiff's son had been picked up by Child Protective Services (CPS) and stated they had the warrant now.

11

63. Defendant Paramo knew of the widespread practice of his subordinate visiting officers, illegally detaining citizen visitors, conducting de facto arrest, and/or false imprisonment of citizens from the vast amount of citizen complaints filed with his office, but failed to act to prevent the unconstitutional acts.

64. As a result of Paramos failure to act to prevent constitutional violations, Plaintiff and her minor son were injured by being deprived of their constitutional rights, and has suffered severe and substantial mental and emotional injuries.

65. Defendant Wilborn heard Plaintiff tell Ramos Plaintiff did not consent to be held or strip-searched and he failed to use his supervisory position over all the defendants above in Count 2 to stop their unconstitutional actions against the plaintiff and her minor son.

66. Defendants Ramos, Wilborn, Ugalde, Valadez, Paramo, Chris, and DOES 1-10 all acted in some way as alleged above to deprive Plaintiff of her Fourth Amendment right to be free from unreasonable searches and seizures, and/or failed to act to protect her from malicious actions of their colleagues.

67. None of the defendants listed above had probable cause to detain Plaintiff even if real information existed that plaintiff would introduce contraband into the facility. The defendants were required by law to obtain a warrant to hold plaintiff or release her when she refused to be held.

68. The defendant used false or fabricated information as a ruse to detain and harass plaintiff for making complaints against RJD's visiting program,

69. Plaintiff at no time voluntarily consented to the defendant's taking her minor son nor holding the both for hours without warrant.

12

70.  The defendants acted maliciously and with conscious disregard for Plaintiff constitutional rights and intentionally inflicted mental and emotional injuries.

## **COUNT 3:**

The allegations contained in §§44-70, inclusive, are hereby incorporated by references.

71.  After Defendant Chris arrived and fraudulently declared to have brought a search warrant at § 68 above, Defendants Ramos and Valadez presented a search warrant purporting to be issued by the San Diego Superior Court, authorizing the defendants to use force against Plaintiff to comply with a court ordered strip-search.

72.  Plaintiff believed the document was authentic and signed the purported warrant and a CDCR Form consenting to an unclothed body inspection after approximately 3 ½ hours, under fraud and duress.

73.  Defendants Ramos and Valadez then conducted an unclothed body search on Plaintiff with negative results for any contraband and released her to her minor son, who they claimed had been taken by CPS.

74.  Before Plaintiff departed she requested a copy of all the documents Ramos displayed to her, at which time, Ramos refused to give them up.

75.  Plaintiff later discovered the warrant the defendants produced was fake and that no warrant had ever been issued for her.

76.  Defendants Chris, Ramos, and Valadez forced Plaintiff to comply with an unreasonable and warrantless search of her persons.

77.   Defendant Paramo knew of the unconstitutional practices of his visiting officers, forcing citizens to do unreasonable searches, but failed to act to stop the practices, therefore condoning the practices.

### COUNT 4:

The allegations contained in §-§ 44-77, inclusive, are hereby incorporated by reference.

78.   Sometime during the constitutional violations alleged above in §§ 56-61, Defendants Ramos, Jane DOE, and Chris, without Plaintiffs consent, conducted a warrantless search of Plaintiff's vehicle and removed her phone and money from her car and brought said items into the prison where Plaintiff was being held.

79.   Defendant Paramo was well aware that visiting staff was targeting Plaintiff for filing complaints and was warned time after time from the several complaints that she filed with his office, but he was deliberately indifferent to her suffering.

80.   Defendant's Ramos, Jane DOE, and Chris's unconstitutional violations on April 17, 2016, as alleged in §§ 44-79, were foreseeable, and could have been prevented if Paramo had intervened when law required or properly trained his officers.

81.   All the Defendant's in Count 4 acted maliciously and/or with conscious disregard for Plaintiff's constitutional rights and acted to intentionally violate her rights and cause harm.

### COUNT 5:

The allegations contained in §§ 44-81, inclusive, are hereby incorporated by reference.

82.   Through the allegations in §§ 44-81, Defendants Ramos, Wilborn, Ugalde, Chris, and DOES 1-10 had some kind of unlawful custody of Plaintiff's minor without authorization from her.

14

83. All of the defendants above forcibly removed Plaintiff's son from her lawful custody and/or maintained custody of her son without warrant or authorization from Plaintiff.

84. All of the defendants above took Plaintiff's son to an entirely different part of the prison, where for hours, Plaintiff did not know the whereabouts of her child.

85. The defendant's in Count 5 acted outrageously, maliciously, and with conscious disregard for Plaintiffs constitutional and parental rights.

86. All of the defendant's in Count 5 acted intentionally to cause harm to Plaintiff and her child by inflicting mental and emotional pain.

87. The defendant's actions were foreseeable, but Paramo failed to act to protect Plaintiff and her son and is responsible for the Defendants above actions.

## COUNT 6:

88. On April 18, 2016, the day after Plaintiff was held against her will and forced to comply with illegal searches, she telephonically contacted RJD's ISU Sgt. Vanderway in a noticed recorded call, and informed him she was acting, regarding the unreasonable searches and seizures above, and requested that he preserve the visiting lobby's video footage from the day prior, April 17, 2016.

89. On April 19, 2016, Plaintiff lodged a complaint with RJD Warden, Defendant Paramo, notifying him of the illegal detention/de facto arrest of her and her minor son, and the illegal and unreasonable searches she was forced to endure at the hands of his subordinate visitation and ISU officers. And lastly, Plaintiff placed Paramo on notice that she would be seeking criminal and civil charges against all the responsible officers for the actions alleged in §§ 44-87 of this complaint.

15

90. After the call to Vanderway and complaint to Defendant Paramo, Defendant Ramos and Ugalde fraudulently updated Plaintiff's electronic "Visitor Profile" to falsely report the plaintiff "was caught with contraband (TOBACCO, A SCALE, LARGE AMOUNTS OF CASH, AND MONEY ORDERS)", and excluded Plaintiff from visiting her husband indefinitely. (See attached Exhibit D, Visitor Profile).

91. Plaintiff was never caught with any contraband or any unlawful item that could be brought into the institution.

92. Defendant's Ramos and Ugalde falsely accused Plaintiff of being in possession of tobacco, a scale, large amounts of cash, and money orders as a means to retaliate against the plaintiff and to justify the illegal detention of Plaintiff and her son and the forced search of her vehicle and persons.

93. Defendants Ramos and Ugalde indefinitely banned Plaintiff from visiting her husband as a way to punish and silence her for protected conduct.

94. The defendants above had no legitimate penological reasons for their actions in the count except to retaliate and to inflict emotional/mental pain.


**COUNT 7:**

88-93. Plaintiff adopts §§ 88-93 of Count 6 as §§ 95-100 of this count.

101. Defendant Ramos's imposition of an indefinite ban on the plaintiff's visitation privileges is unconstitutional because it bears no rational relationship to a legitimate penological interest.

16

102. Defendant's Ramos and Ugalde claim to have "caught" the plaintiff with "tobacco, a scale, large amounts of cash, and money orders". Plaintiff was never formally charged nor was the plaintiff ever convicted administratively or criminally with attempting to introduce contraband to any correctional facility or served any prior suspension for violating the CDCR's policies for any reason.

103. The CDCR's regulations, which Ramos and Ugalde adhere to, forbids them from imposing the indefinite ban on a citizen's visitation privileges for being found in possession of contraband on the first occasion, but requires them to impose an indefinite ban, only if found in possession of contraband on any occasion, after the first. In the plaintiff's case, she has never been found in possession of contraband or convicted or suspended as required by the CDCR's regulations prerequisites.

104. Defendant's Ramos decision to impose a lifetime ban on Plaintiff's visiting privileges and association rights with Mr. Loftis was reached exclusively on Ramos attempting to cover up her unconstitutional acts stated above in Count 2-6 and to cause harm to the plaintiff.

105. Ramos's indefinite ban will hinder Plaintiff's exercise of her First Amendment rights and will continue to cause more irreparable harm.

106. Defendant Paramo has upheld the unconstitutional ban, and refuses to comply with the law and reverse Ramos's arbitrary decision.

## COUNT 8:

The allegations in §§ 44-106, inclusive, are hereby incorporated by reference.

107. On or about April 17, 2016, Defendant Ramos, purported to have excluded Plaintiff indefinitely from the visiting program, for allegedly possessing contraband. (See Exhibit D). Plaintiff was never given notice of the charges or a chance to be heard.

17

108. On May 20, 2016, Defendant Paramo responded by letter to Plaintiff's April 19, 2016 Citizens Complaint, (see §89 above). In response, Paramo claimed that the plaintiff had voluntarily consented to visiting officials detaining her and her minor son for 3 ½ hours, but failed to give notice to Plaintiff that disciplinary action was going to be taken against her for the allegations or providing a chance to contest the charges. (See May 20, 2016 response attached Exhibit E).

109. On June 6, 2016, Mr. Loftis' assigned correctional counselor, O'Hailey, notified him that Defendant Ramos had permanently excluded the plaintiff from ever visiting at a CDCR facility again, but refused to give Mr. Loftis or Plaintiff written notice.

110. After filing a citizen's complaint with the Director of the CDCR, Scott Kernan, regarding the illegal detention, unauthorized searches, and requesting written notice of why the officials at RJD took the action they did on April 17, above, the secretary to the director responded to the complaint on August 2, 2016, and provided the plaintiff with a copy of the permanent "Exclusion Order" unsigned, and not identifying the official who authorized the exclusion order, dated July 20, 2016. (See Exclusion Order, attached, hereto, as Exhibit F).

111. The CDCR entitled the plaintiff to visitation at their facilities as long as plaintiff was not charged and found guilty of violating the CDCR's policies and that, in any case, that she was charged with violating any policy she would receive written notice and a right to be heard before any sanctions were made final. [Cal. Code of Regs., Title 15 §§ 3176(b) and 3176.1 (g).] Specifically, the regulations state as follows:

> *"Written notification shall be provided to the visitor when action is taken by the official in charge of visiting to deny, terminate, or restrict a visit. The written notification shall*

18

*contain information instructing the visitor how to appeal the action as outlined in*

*section 3179." Id. §3176(b)*

*"The visitor and the inmate shall be notified in writing of all formal warnings, termination,*

*suspensions, and revocations. The notice shall clearly state the reason for the action*

*length of time any sanction will apply. The notification shall also include the signature*

*of the official taking the action and advise the visitor of the right to appeal in*

*accordance with §3179. The notification shall be provided to the visitor at the time of*

*the action or mailed to the visitor's last known address within five working days of the*

*action. Id. §3176.1(g)."*

112. The CDCR's regulations further prohibited prison officials under the rank of Chief

Deputy Warden from issuing exclusion orders and from issuing permanent exclusion orders on a

visitor who had never been suspended, and further gave visitors who were properly excluded the

right to meet with the official who excluded them, and present evidence to rescind the exclusion

or mitigate the length of time of the sanction imposed. [Cal. Code of Regs., 15 §§

3176.2(c)(3)(c), 3176.3(a) and (f).]

113. Defendant Ramos abused her discretion when she refused to give Plaintiff notice

that she was bringing administrative charges, causing Plaintiff prejudice because she was not

able to present evidence in her favor, which resulted in a life time ban without any appeal rights.

Furthermore, Ramos is a correctional sergeant and did not have authorization nor authority to

exclude plaintiff, thus; depriving Plaintiff of her procedural due process rights.

114. Defendant Paramo refused to use his supervisory position over Ramos to reverse

her arbitrary actions and instead has upheld the abuses.

115. As a result of Ramos's and Paramo's unconstitutional actions, the plaintiff has

suffered and will continue to suffer by not being able to visit her husband and having a false

stigma on her reputation that she smuggles contraband into prisons.

116. Defendant's Ramos and Paramo acted intentionally to deprive Plaintiff of her due process rights and to ensure that she was subjected to an unfair administrative process so her visitation privileges would be seized.

## CAUSES OF ACTION

## COUNT 1

## FIRST AMENDMENT RETALIATION

## (ALL DEFENDANTS IN COUNT 1 ABOVE)

123. The allegations in §§78-81 are incorporated as if re-alleged, herein.

124. All defendants mentioned above in Count 4, acted as alleged to, conduct a warrantless search of Plaintiff's vehicle and illegally remove her property from her car without her consent, and/or further the conduct failed to stop the conduct or otherwise is responsible, as alleged above, violating the Fourth Amendment.

## COUNT 5:

## (FOURTEENTH AMENDMENT PARENTAL RIGHTS)

## (ALL DEFENDANTS ABOVE IN COUNT 5)

125. The allegations in §§82-87 are incorporated, as if, re-alleged, herein.

126. All defendants above in Count 5 acted as alleged to forcibly remove Plaintiffs minor son from her lawful custody to cause emotional and mental anguish and to keep the plaintiff in compliance with an illegal detention. All defendants acted unlawfully to keep control of Plaintiff's minor son and/or failed to act to stop the unlawful taking of Plaintiff's child. All defendant's violated Plaintiff's substantive due process rights.

## COUNT 6:

## (FIRST AMENDMENT RETALIATION)

## (ALL DEFENDANTS ABOVE IN COUNT 6)

20

127. The allegations in §§88-94 are incorporated, as if, re-alleged, herein.

128. All the defendants above in Count 6 acted, as alleged, to retaliate against Plaintiff, for protected conduct, by falsely accusing her of possessing contraband and indefinitely excluding her from the visiting program and/or failed to act to stop the defendants from retaliating or furthering the retaliation in violation of the First Amendment to the U.S. Constitution.

## COUNT 7:

## (FIRST AMENDMENT ASSOCIATION RIGHTS)

129. The allegations in §§101-106 are incorporated, as if, re-alleged, herein.

130. Defendant's Ramos, Ugalde, and Paramo acted without any penological reasons to place an indefinite ban on Plaintiff's visitation rights with her husband, but rather used an indefinite ban to punish the plaintiff for protected speech and seeking redress of harm the Defendant's caused her. The defendants by issuing the indefinite ban without any legitimate penological reason violated the plaintiff's association rights protected by the First Amendment to the U.S. Constitution.

## COUNT 8
## (FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS)
## (ALL DEFENDNAT'S ABOVE IN COUNT 8)

131. The allegations in §§107-116 are incorporated, as if re-alleged, herein.

132. All the defendant's mentioned above in Count 8 failed to provide Plaintiff written noticed of administrative charges and required by their regulations subjected Plaintiff to an unfair hearing and arbitrarily excluded/revoked her visitation privileges in violation of the Fourteenth Amendment to the U.S. Constitution.

# **REQUESTED RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgement be entered against the defendants as follows:

**1.** Declaratory judgment, in the named defendants' individual/official capacities as follows:

    A. As to Count 7, declare as follows:

(1) Defendant Ramos, imposition of an indefinite ban on Plaintiff's visitation privileges violated Cal. Code of Regs., Title 15 §§ 3173.2 (c)(3)(C) and (3)(I), 3176.3 (a), and the First Amendment Freedom of Association because her actions were arbitrary and bare no rational relationship to a legitimate penological purpose.

**2.** Defendant Paramo, as Warden/highest authority of RJD, had an obligation to reverse Ramos' arbitrary actions, and his failure to act furthered/encouraged Ramos' arbitrary actions and violated the First Amendment.

    B. As to Count 8, declare as follows:

(1) That Plaintiff was entitled to written notice of adverse action and a chance to be heard, before her visiting privileges could be rescinded and she be branded as a prison smuggler, and that the defendant refusal give notice and a chance to be heard prejudiced plaintiff, and violated the Fourteenth Amendment.

(2) Declare that Defendant Ramos, as a correctional sergeant, lacked the required rank to "exclude" Plaintiff, and that she abused her discretion, in violation of CDCR'S regulations and the Fourteenth Amendment.

(3) Declare that Defendants Ramos' imposition of an indefinite ban, violated the CDCR's regulations and the Fourteenth Amendment; and that Defendant Paramo's failure to reverse her arbitrary actions also violated the Fourteenth Amendment.

**3.** Injunctive relief against the named defendant's in their individual/official capacities as follows:

    A. As to Counts 7 and 8, reverse defendant Ramos's exclusion of Plaintiff, and reinstate plaintiff previous visitation approval before Ramos's arbitrary actions;

**4.** Separate damages for each claim against each defendant named in the count in an amount to be determined at trial.

     a. As to Count 1-6, grant damages individually, as to the allegations in an amount to be determined at trial.

**5.** Punitive damages against all defendants in counts 1-6, in an amount to be determined at trial, in their individual capacities.

**6.** Award court fees.

7. Reasonable attorney's fees

**8.** Award any other relief the Court deems just and proper.

## **DEMAND FOR JURY**

As to Counts 1-6, Plaintiff demands a jury trial.

## **DEMAND FOR BENCH TRIAL**

Plaintiff demands a separate bench trial as to Counts 7 and 8.

Dated: September 21, 2017

Marissa Loftis

Exhibit - A

Exhibit - B

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| AF-9076 | LOFTIS | FA-03-14-036R | RJDCF | 03-22-14 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☒ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER_____

**THE CIRCUMSTANCE OF THIS RULES VIOLATION REPORT IS AS FOLLOWS:**

On Saturday, March 22, 2014, at approximately 1320 hours, while performing my duties as Control Booth Officer for A/D Visiting, I observed Inmate LOFTIS, AF-9076, FA1-202U, and his visitor kissing on the mouth and excessively touching each other while they were on "A" patio. I approached Inmate LOFTIS and escorted him out of the visiting room into the A/D rear search area where I counseled Inmate LOFTIS on kissing and touching. Inmate LOFTIS stated, " It was not a kiss but a peck." Sergeant D. Ramos was informed of the CDCR Rules Violation and the multiple verbal attempts to counsel Inmate LOFTIS by previous correctional officers such as: C/O Tapia, Excessive Contact, verbal warning on 09-29-13; C/O Garcia, Excessive Contact, verbal warning on 10-05-13; and C/O Garcia, Kissing, verbal warning on 10-10-13. Inmate LOFTIS also received a CDC 128 on 11-24-13 for Excessive Contact. Inmate LOFTIS' visit was terminated and he is aware of the CDC 115. Upon releasing Inmate LOFTIS' visitor, Marrisa Phillips, she asked me why the visit was terminated and I informed her that it was because of excessive contact. She replied, "Not like everyone else isn't doing it." Inmate LOFTIS is a participant in the MHSDS Program at the EOP level of care. Inmate LOFTIS is aware of this report.

| | |
|---|---|
| SIGNATURE OF WRITER<br>R. ARAUJO, Correctional Officer | DATE SIGNED<br>10/8/14 |
| GIVEN BY: (Staff's Signature) | DATE SIGNED<br>10/8/14 | TIME SIGNED<br>1250 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

CDC 115-C (5/95)

OSP 14 133382

# RULES VIOLATION REPORT

MHSDS: EOP          G.P.L.: 12.9

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| AF-9076 | LOFTIS | | RJDCF | FA1-202U | FA-03-14- |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3175(g) VISITING STAND. | EXCESSIVE CONTACT | A VISITING | 03-22-14 | 1320 |

**CIRCUMSTANCES**

On Saturday, March 22, 2014, at approximately 1320 hours, while performing my duties as Control Booth Officer for A/D Visiting, I observed inmate LOFTIS, AF-9076, FA1-202U, and his visitor kissing on the mouth and excessively touching each other by hugging each other while they were on "A" patio. I approached inmate LOFTIS and escorted him out of the visiting room into the A/D rear search area where I counseled inmate LOFTIS on kissing and touching. Inmate LOFTIS stated, "It was not a kiss but a peck." Sergeant D. Ramos was informed of the CDCR Rules Violation and the multiple verbal attempts to counsel inmate LOFTIS by previous correctional officers such as: C/O Tapia, Excessive Contact, verbal warning on 09-29-13; C/O Garcia, Excessive contact, verbal warning on 10-05-13; and C/O Garcia, Kissing, verbal warning on 10-10-13. Inmate LOFTIS also received a CDC-128 on 11-24-13 for excessive contact. Inmate LOFTIS' visit was terminated and is aware of the CDC-115. Upon releasing inmate LOFTIS' visitor, Marrisa Phillips, she asked me why the visit was terminated and I informed her that it was because of excessive contact. She replied, "Not like everyone else isn't doing it." Inmate LOFTIS is a participant of the MHSDS Program at the EOP level of care. Inmate LOFTIS is aware of this report.

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ R. Araujo, Correctional Officer | | | Visitng Relief Off. | Th/F |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|---|
| ▶ D. Ramos, Correctional Sergeant | | | DATE | LOC. |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☐ SERIOUS | | | ▶ S.A. Sanchez, Facility Captain | ☐ HO ☐ SHO ☐ SC ☐ FC |

**COPIES GIVEN INMATE BEFORE HEARING**

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| | ▶ | | | | | |

| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| | ▶ | | | ▶ | | |

**HEARING**

REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| | | ▶ | | |

| REVIEWED BY: (SIGNATURE) | | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|---|
| ▶ | | | ▶ | |

| | | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|
| COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | ▶ | | |

'88)

Exhibit-C

FROM: Marissa L. Phillips

TO: Warden, Daniel Paramo

DATED: 3/30/2014

IN RE: Violation of the Department of Operations Manual

(DOM)


Warden, Daniel Paramo:


This citizen's complaint is pursuant to the violation
of the Department of Operations Manual (DOM) Section
33030.9(f)(X) against C/O R. Araujo.


33030.9(f):  *Dishonesty.*

33030.9(x):  *Unlawful retaliation against any other state
officer or employee or member of the public who in good
faith reports, discloses, divulges, or otherwise brings to
the attention of, the Attorney General or any other
appropriate authority, any facts or information relative to
actual or suspected violation of any law of this state or
the United States occurring on the job or directly related
to the job.*


On the 22ᵈ day of March 2014, the scheduled visitation
of Marissa L. Phillips and Marquise D. Loftis Jr. (Minor)
was terminated with inmate Marquise D. Loftis CDC#AF9076 at
approximately 1:20 p.m. by SGT. D. Ramos.  The termination
of this visit is in violation of 33030.9(x).  SGT. D. Ramos

is retaliating against myself, Marissa L. Phillips and inmate Marquise D. Loftis due to a CDCR 22 complaint form that he filed against SGT. D. Ramos on the 6th of March 2014, forwarded to Lt. Anderson. It can be noted that SGT. D. Ramos, in fact, responded to the said complaint, which is a conflict of interest. SGT. D. Ramos had no basis to intercept the CDCR 22 complaint form when it was forwarded to her superior, or the fact that it was a complaint against herself. This goes to the violation of (DOM) 33033.9(x).

On the 22nd day of March 2014, SGT. D. Ramos entered into "A" visiting room. As I, Marissa L. Phillips, went inside to buy a drink from the vending machine I saw SGT. D. Ramos standing with C/O R. Araujo, and proceeded to tell him something. It is at that time that C/O R. Araujo went outside and directed inmate Loftis inside, and I met him at the door for him to give me our child. C/O R. Araujo proceeded to take inmate Loftis into the back. I, Marissa L. Phillips, returned to our assigned table with our child, it is at that time that the visiting room porter, Shabazz, approached me and informed me that our visit was being terminated. I approached the podium and asked C/O Mendoza

(who was the assigned staff member to "A" visiting), "Why
are we being terminated?" and he replied to me, "You will
have to speak to the Sergeant". I then went out to
retrieve my pass from C/O R. Araujo. I then proceeded to
ask him why our visit was being terminated, since he was
the one that had come onto the patio and took inmate Loftis
back. He then replied, "It was per the Sergeant. You'll
have to speak to her". I then retrieved my pass from him,
and proceeded toward the visit-processing lobby. It is
there that SGT.D. Ramos was sitting at the computer, and
called me over as I was heading outside to wait for C/O
Hernandez to come pick up leaving visitors on the bus to
take them to the parking lot. She then proceeded to fill
out a CDC 887-B form and told me she was terminating our
visit for engaging in "excessive contact".

On the 24th of March 2014, inmate Loftis received a CDC
115. The entirety of this 115 was fabricated, which is
pursuant to the violation of (DOM) 33030.9(f). In the 115
C/O R. Araujo falsified the charge of excessive contact.
When our visit was terminated I was at the vending machine
and my partner was outside on the patio, which is why I had
to walk to the door to get our child because I didn't know

what had just occurred. Also, pursuant to (DOM) 33030.9(f), C/O R. Araujo fabricated statements that I, Marissa L. Phillips, never said. In the 115 C/O R. Araujo stated that I told him, "Not like everyone else isn't doing it". He is falsifying a confession by me to have a legitimate purpose to authorize the action of terminating our visitation. It can also be noted that C/O R. Araujo is not responsible for the termination of our visit on the 22nd of March 2014. This can raise the question as to why C/O R. Araujo is filing the 115 form when it is evident that SGT. D. Ramos is, in fact, the one who terminated our visit, and personally handed me the CDC-887-B form and also, that on the 22nd of March 2014, C/O R. Araujo had informed me when I asked him the reason for the termination of our visit, that it was "per the Sergeant. You'll have to ask her".

On the 23rd of February 2014 we had a prior incident with C/O R. Araujo, C/O Tapia, and SGT. D. Ramos where they had terminated our visit due to inmate Loftis holding his child on his lap.

The actions of C/O R. Araujo's and SGT. D. Ramos's actions

It is evident that C/O R. Araujo and SGT. D. Ramos are retaliating, harassing, and attempting to intimidate our family due to previous complaints filed against them by my partner, inmate Loftis and myself. I am requesting that the video footage for "A" visiting from 01:15 p.m. to approximately 01:35 p.m. on the 22nd of March 2014 be stored and reviewed to show that the claims and charges of C/O R. Araujo and SGT. D. Ramos are fabricated, retaliatory, and falsified documentation of a made-up incident. Also, I am requesting a full investigation of these claims and that disciplinary action be taken against SGT. D. Ramos and C/O R. Araujo.

Marissa Phillips

Marissa Phillips

Exhibit-D

S021H          **Person Visitation Consideration** Wednesday December 14, 2016 10:58:04 A

Person Name: PHILIPS, MARISSA L                          Party ID: 101581020

---

Effective Date: 04/17/2016
Consideration Type: No Visits Allowed at Institution
Reason: Contraband introduction-misc.
Restricted Institution: RJ Donovan Correctional Facility
Expiration Date: 04/17/2999
Approved By: Ramos, ~~~~~~
Status: Active
As of Date: 04/17/2016

---

**Comments**

VISITOR WAS CAUGHT WITH CONTRABAND. (TOBACCO, SCALE, LARGE AMOUNTS OF CASH, MONEY ORDERS). VISITOR IS EXCLUDED FROM THE RJDCF VISITING PROGRAM.

> **Prior Page**

Show Last Updated Information

Exhibit -E

Exhibit - F



CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

# NOTICE OF VISITOR EXCLUSION

## VISITOR COPY

| | |
|---|---|
| **Inmate Name:** LOFTIS, MARQUISE D. | **Date:** 07/20/2016 |
| **CDC#:** AF9076 | **Facility:** RJD-Facility A |

**Visitor:** MARISSA L. PHILIPS

25300 Oakana Road
Ramona, California 92065

As of 04/17/2016, you are excluded from visiting any inmate at All Institutions for:

Possessing/Passing of Contraband

This exclusion expires on 04/17/2999.

Action taken by:     Date: 04/17/2016

Signature: _____

Visitors may appeal any action taken above by following the established appeal process outlined in the
California Code of Regulations, Title 15 Division 3, Section 3179, Appeals Relating to Visiting.

## All supplemental information sent must include a copy of this notice.

CDCR SOMS IVTT147 - NOTICE OF VISITOR EXCLUSION

**Case No.: 16-cv-2300-MMA (DHB)**

I, Marissa Loftis, declare that I am a resident of the county of San Diego, in the city of Ramona, California. My address is 25300 Oakana Road; Ramona, California.

On September 22, 2017, I sent the hereto attached: **FIRST AMENDED CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. §1983 FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, NOTICE OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT WITH SEPARATE MEMORANDUM WITH POINTS OF AUTHORITY, and MEMORANDUM OF POINTS OF AUTHORITY IN SUPPORT OF MOTION TO FILE AMENDED COMPLAINT** to Respondent's listed below, by placing a true copy, thereof, enclosed in sealed envelopes with postage, thereon, fully prepaid, in the United States mail at Ramona, California, addressed to the parties listed below, as follows:

Terrence Sheehy
600 West Broadway, Suite 1800
San Diego, CA 92186-5266

Dated: September 22, 2017

_____
Marissa Loftis

Proof of Service

Case No.: 16-cv-2300-MMA (DHB)


I, Marissa Loftis, declare that I am a resident of the county of San Diego, in the city of Ramona, California. My address is 25300 Oakana Road; Ramona, California.


On September 22, 2017, I sent the hereto attached: **PLAINTIFF'S INITIAL DISCLOSURE** to Respondent's listed below, by placing a true copy, thereof, enclosed in sealed envelopes with postage, thereon, fully prepaid, in the United States mail at Ramona, California, addressed to the parties listed below, as follows:


Terrence Sheehy

600 West Broadway, Suite 1800

San Diego, CA 92186-5266


Dated: September 22, 2017

_____
Marissa Loftis