FILED

MAR 20 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY \_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISSA LOFTIS, et al.,<br><br>        Plaintiff,<br><br>v.<br><br>DENISE RAMOS, et al.,<br><br>        Defendants. | Case No.: 16-cv-2300-MMA (DHB)<br><br>**ORDER DENYING WITHOUT PREJUDICE JOINT MOTION RE: PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**(ECF No. 43)** |

## BACKGROUND

This is a § 1983 action. Plaintiff Marissa Loftis filed a complaint on behalf of herself and her minor child, Marquise Deangelo Loftis Jr. (collectively "Plaintiffs"). (*See* ECF No. 37.) Plaintiff Marissa Loftis's husband and plaintiff Marquise Deangelo Loftis Jr.'s father is incarcerated at R.J. Donovan Correctional Facility in San Diego. (*Id.*) Plaintiffs initially alleged that while visiting their husband/father on April 7, 2016, they were illegally detained by defendants Ramos and Wilborn for three hours based on their religious beliefs. (*See* ECF No. 1.) Plaintiffs alleged that they were separated and that plaintiff Marissa Loftis was subjected to a strip search in order to regain custody of her son. (*Id.*) Defendants

contend that plaintiff Marissa Loftis was properly detained after she was caught trying to bring tobacco, a scale, and money orders into the prison. (*Id.*)

On September 25, 2017, defendants served their discovery responses, including objections, a privilege log, and a declaration in support of the assertion of privilege, to plaintiff's initial series of Requests for Production of Documents ("RPDs")[1] directed to both defendants D. Ramos and J. Wilborn. (*See* ECF No. 43-2.) On November 6, 2017, defendants served separate responses on behalf of each defendant, D. Ramos and J. Wilborn, to the second set of RPDs propounded by plaintiff. (*See* ECF No. 43-5.) Thereafter, attorney Keith Rutman made his initial appearance on behalf of plaintiff Marissa Loftis and added plaintiff Marquise Deangelo Loftis, Jr. as a party on November 20, 2017.[2]

In response to a Joint Motion to Continue Litigation Dates and Deadlines filed on December 12, 2017, Judge Porter entered an Order Granting Joint Motion to Continue and/or Extend Relevant Litigation Deadlines and Dates on December 15, 2017. Therein, the Court vacated the deadlines previously set and issued a revised schedule for the remaining discovery. She also ordered the parties to file a joint motion addressing any outstanding discovery disputes no later than January 31, 2018. (ECF No. 36 at 2.) In accordance with this Order, on January 31, 2018, the parties filed the instant Motion seeking resolution of a discovery dispute; specifically, defendants' assertion of privilege in their September 25, 2017 and November 6, 2017 responses to plaintiff's RPDs. (*See* ECF No. 43.)

---

[1] It is unclear to the Court when Plaintiffs initially propounded the first set of Requests for Production of Documents as it is not noted within the Joint Motion or its corresponding exhibits. (*See* ECF No. 43.)

[2] On August 7, 2017, Plaintiff Marquise Deangelo Loftis Jr.'s claims were dismissed without prejudice because he was an unrepresented minor and no guardian ad litem was formally appointed by the Court. (*See* ECF No. 24.)

//
//

## DISCUSSION

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party is entitled to seek discovery of any non-privileged matter that is relevant to his or her claims and proportional to the needs of the case. The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery. *See* Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment. Accordingly, parties must conduct a cost-benefit analysis weighing the importance of the issue to the outcome of the case, the amount at stake in the case, the parties' resources, and their relative access to the information. *Id.* Thus, only evidence that is "relevant to any party's claim or defense" is within the scope of permissible discovery. *Id.*; *Medicinova Inc. v. Genzyme Corp.*, No. 14-cv-2513-L (KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) ("The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.'") (quoting *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005)).

A party may also request the production of any document within the scope of Rule 26(b) of the Federal Rules. Fed.R.Civ.P. 34(a). Under Rule 34, a request for the production of documents is sufficient if the documents or things to be produced are described by item or category with "reasonable particularity." Fed.R.Civ.P. 34(b)(1)(A). "The test for reasonable particularity is whether the request places a party upon 'reasonable notice of what is called for and what is not.'" *Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D.

Ill. 2004); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-50 (10th Cir. 2008) ("[A] discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court…to ascertain whether the requested documents have been produced.'"). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed.R.Civ.P. 34(b)(2)(B). Rule 34 requires that objections to a request for the production of documents be timely and the grounds be stated with specificity. *See* Fed.R.Civ.P. 34(b)(2).

"If the responding party objects to the requested form—or if no form was specified in the request—the party must state the form or forms it intends to use." Fed.R.Civ.P. 34(b)(2)(D). Unless otherwise stipulated or ordered by the Court, a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request. Fed.R.Civ.P. 34(b)(2)(E)(i).

1. Official Information Privilege Invocation

In response to all of plaintiffs' requests, defendants provided the following objection:

> "This request seeks privileged information or materials that confidential and protected by the official information privilege. 5 U.S.C. § 552; *Kerr v. U.S. Dist. Court*, 511 F.2d 192, 198-99 (9th Cir. 1975); *Hampton v. City of San Diego*, 147 F.R.D. 227, 229-30 (S.D. Cal. 1993); *Jackson v. County of Sacramento*, 175 F.R.D. 653 (E.D. Cal. 1997). These files are kept at Richard J. Donovan Correctional Facility. Defendants produce [*sic*] the accompanying declaration of Lieutenant F. Hernandez, Investigative Services Unit, in support of these objections. Without waiving any objection, Defendants produce the documents attached hereto:"[3]

---

[3] Without waiving any objection, Defendants produced the following documents: (1) a Notice of Request for Search (CDC 888) dated April 17, 2016; (2) five (5) photos of contraband confiscated from Marissa Loftis on April 17, 2016; (3) a Notice of Visitor Exclusion; (4) a visitor profile; (5) a letter dated April 19, 2016, from Marissa Loftis to Warden Paramo; (6) a letter dated May 20, 2016, from Warden Paramo to Marissa Loftis; (7) CDCR 22 dated May 25, 2016, from inmate Loftis, AF9076; (8) a letter dated

(*See* ECF Nos. 43-2 at 2-5; 43-5 at 4, 9-13; 43-6 at 4-7.)

   2.   Official Information Privilege

In the Joint Motion, defendants claim plaintiffs' requests seek official information that is kept confidential and considered privileged information, and is therefore not subject to discovery. (ECF No. 43 at 9-10.) Defendants contend that disclosure of documents containing sensitive investigatory information of illegal activity within the prison could jeopardize official investigations and place other inmates and correctional staff at risk of retaliation if informants were to be discovered. (*Id.* at 10.) Plaintiffs assert that the requests are relevant to the allegations in the Complaint, the documents cannot be acquired by alternative means, and any concern of retaliation is speculative at this point. (*Id.*) Plaintiffs also assert that Defendants' concern regarding any impediment to future investigations and/or retaliation of other inmates that the disclosures may bring can be addressed through a protective order. (*Id.*)

Federal common law recognizes a "qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing *Kerr v. U.S. Dist. Ct.*, 511 F.2d 192, 198 (9th Cir. 1975), *aff'd*, 426 U.S. 392, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)). The party asserting the privilege has the burden of proving the privilege. *Kelly v. City of San Jose*, 114 F.R.D. 653, 662 (N.D. Cal. 1987); *see also Hampton v. City of San Diego*, 147 F.R.D. 227, 231 (S.D. Cal. 1993) ("Through this opinion, this court is

---

September 23, 2016, from Marissa Loftis to Warden Paramo; (9) a letter dated October 4, 2016, from warden Paramo to Marissa Lofits; (10) an undated letter from Marissa Loftis to director Scott Kernan title "In re DELIBERATE FLOUTING OF REGULATIONS/VISITING APPEAL;" (11) a letter dated November 16, 2016, from Kathleen Allison, director of adult institutions to Marissa Loftis; (12) an undated letter from Marissa Loftis to Warden Paramo titled "Amended Appeal;" (13) an undated letter from Marissa Loftis to Warden Paramo titled "Appeal regarding 'Exclusion Order;'" (14) an inmate appeal RJD-A-16-2206, filed by inmate Loftis, AF9076; and (15) an inmate appeal RJD-A-16-2713, filed by inmate Loftis, AF9076.

5

hereby joining the Northern District's and Central District's procedures outlined in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) and *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); *Stewart v. City of San Diego*, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying *Kelly*). Some factors that courts may consider when conducting the case-by-case balancing analysis include:

> "(1) [t]he extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) [t]he impact upon persons who have given information of having their identities disclosed; (3) [t]he degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) [w]hether the information sought is factual data or evaluative summary; (5) [w]hether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) [w]hether the police investigation has been completed; (7) [w]hether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) [w]hether the plaintiff's suit is non-frivolous and brought in good faith; (9) [w]hether the information sought is available through other discovery or from other sources; and (10) [t]he importance of the information sought to the plaintiff's case." *Kelly*, 114 F.R.D. at 663.

In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." *Kelly*, 114 F.R.D. at 663. In civil rights cases against police departments, the balancing test should be "moderately pre-weighed in favor of disclosure." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal.1995) (quoting *Kelly*, 114 F.R.D. at 661).

To invoke the official information privilege, defendants must make a substantial threshold showing. *See Soto*, 162 F.R.D. at 613; *Hampton*, 147 F.R.D. at 231; and *Dowell v. Griffin*, 275 F.R.D. 613, 616 (S.D. Cal. 2011). To meet this threshold requirement, defendants "must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Dowell*, 275 F.R.D. at 616. The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the

governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests; and (5) a projection of how much harm would be done to the threatened interests if disclosure were made. *Soto*, 162 F.R.D. at 613 (internal quotation marks omitted).

3. Analysis

In the Order issued December 15, 2017, this Court directed the parties to address "any outstanding discovery disputes" in a joint motion, filed no later than January 31, 2018. [Doc. No. 36, p. 2]. The responsive Joint Motion filed by the parties, however, fails to provide this Court with sufficient information with which to make a determination.

Specifically, incomplete information is provided regarding exactly what has already been produced by the defendants in response to plaintiffs' requests. While some documents produced are identified,[4] other discovery responses attached as exhibits to the Joint Motion refer to the production of documents, "subject" to objections made, but fail to identify any of these documents, whether they were produced, whether or not these productions were responsive and adequate, and if not, why. [*See, e.g.* Doc. No. 43-5, pp. 3-10; 43-6, pp. 2-3, 6.] Additionally, the disputed document requests are set forth in the Joint Motion, along with the defendants' responses, but no detailed explanations are provided by plaintiffs to each request to support their contention that the responses are inadequate and why, other than their discussion regarding the "general scope of discoverable materials." [Doc. No. 43, pp. 5-8]. The only argument set forth by plaintiffs to support their demand for further production of documents is the sweeping assertion that: "[p]laintiff's requests are relevant to the allegations in the lawsuit. They are simply witness statements and photographs, nothing more." [Doc. No. 43, p. 10]. Plaintiffs go on to state,

---

[4] *See* footnote 3, *supra.*

7

again without the benefit of any analysis, that "[i]t is virtually impossible or impractical to acquire the information through (sic) alternative means, such as investigation or interviews." *Id.* Lastly, plaintiffs dismiss the defendants' concerns that the disclosure of the information in question could jeopardize official investigations and place other inmates and correctional staff in harms' way as "speculative" and something that can be addressed through an appropriate protective order. *Id.* This flip response to safety concerns is not helpful.

Similarly, the defendants have also failed to articulate the specific bases for their safety concerns and privilege assertions in response to each of the document requests at issue. The Court can speculate that documents that pertain exclusively to the search of plaintiff Denise Ramos may not disclose information that would put inmates or correctional staff in jeopardy, and may therefore be subject to production, subject to a protective order. By contrast, documents that pertain to entry screening protocol in general, if produced without the protection of an appropriate protective order, could potentially be used by individuals seeking admittance to the facility to avoid the detection of contraband. Further, assuming that they have any relevance to this case at all, documents requested that address inmate procedures in the facility, or which involve investigations of plaintiffs' husband/father also raise viable security concerns, as would any documents referencing investigations pertaining to him.

The Joint Motion also fails to adequately describe the efforts, if any, the parties have made to agree to terms of a tailored protective order. Specifically, in Section C, plaintiffs represents that the parties met and conferred and that plaintiffs' "offer to agree to a protective order was politely declined." [Doc. No. 43, p. 5]. The defendants state in the very next sentence that a protective order should be issued "in the event the Court orders any confidential or privileged documents to be produced." *Id.* No information is provided to the Court regarding efforts, if any, to reach an agreement regarding the terms for an

appropriate protective order.[5] The quoted language, however, evidences a failure on the part of both parties to diligently endeavor to resolve this issue and to bring only matters in dispute to the Court's attention for resolution.

The wholesale failure to meet and confer, in person, in detail about appropriate terms for a protective order and each of the discovery requests at issue is evident. As such, the parties have failed to comply with both Judge Bartick's Civil Chamber Rules and the Local Rules of this Court. *See* Judge Bartick's Chambers Rule IV; Civ.L.R. 26.1, 83.4.

Based on the Court's reading of the Joint Motion, it is evident both parties completely ignored the proportionality prong of Rule 26(b)(1). For that reason, plaintiffs have not addressed whether the documents they seek are proportional to the needs of this case. Likewise, defendant has failed to demonstrate with specificity why the requested documents should not be produced. Neither party address factors which underly the proportionality analysis, namely, "the importance of the issues at stake in this action," "the burden of expense of some of the proposed discovery[,]" "the parties' relative access to relevant information, the parties' resources, or the importance of the discovery in resolving the issues." *See N.U. v. Wal-Mart Stores, Inc.*, 2016 WL 3654759, at *7 (D. Kansas July 8, 2016). As such, the Court finds both plaintiffs' requests and the defendants' objections to be unsustainably overbroad.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The parties are ordered to meet and confer, in person, about (a) each and every discovery request addressed in the Joint Motion [Doc. No. 43], and (b) terms of a stipulated protective order no later than **April 2, 2018**.

---

[5] The Court recognizes that the discussion regarding a protective order has changed, now that the plaintiffs are represented by counsel. In light of the nature of some of the documents at issue, it is evident that a category of confidential documents marked as "Confidential—Counsel Only" is appropriate.

9

2. The parties are to submit a revised Joint Motion related to any outstanding discovery disputes which they are not able to resolve after conscientious meet and confer efforts in accordance with this Order, if necessary, no later than **April 13, 2018**.[6]

3. The parties may file a joint motion for protective order no later than **April 13, 2018** subject to Rule V. of Judge Bartick's Chamber Rules.

IT IS SO ORDERED.

Dated: March 20, 2018

KAREN S. CRAWFORD
United States Magistrate Judge

---

[6] If the parties choose to submit a revised Joint Motion, the parties shall submit the Joint Motion for Determination of Discovery Dispute as follows: For each written discovery request in dispute, the Joint Motion must include: (1) The exact wording of the discovery request; (2) The exact response to the request by the responding party; (3) A statement by the propounding party and any points and authorities as to why a further response should be compelled; and, (4) A precise statement by the responding party and any points and authorities as to the bases for all objections and/or claims of privilege. Any such joint motion shall be accompanied by a declaration from **lead** trial counsel of each party to the dispute establishing compliance with the meet and confer requirements.